**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

PARDEEP KUMAR,

Petitioner,

v.

JASON JOHNSON, in his official capacity as Warden of the Greene County (Missouri) Jail, *et al.*,

Respondents.[1]

No. 26-03503-CV-S-BP

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner has been detained by the Department of Homeland Security ("DHS") even though he (1) had been released on bond and (2) has not violated his bond conditions. Pending is his Petition for Writ of Habeas Corpus, in which he argues federal statutes and the Due Process Clause require that he be released or, in the alternative, granted a bond hearing. As discussed more fully below, the Court concludes the Petition should be **GRANTED** and Petitioner should be released from custody.

## I. BACKGROUND

Petitioner alleges (and Respondents do not dispute) the following facts. Petitioner is a citizen of India who entered the United States without inspection in June 2023 and has remained in the country ever since. (Doc. 1, ¶¶ 2, 18.) DHS detained him shortly after he entered the country, then "permitted [him] to reside in the community under the alternatives to Detention

[1] While Petitioner is being held pursuant to the authority of federal officials, he is in the physical custody of the Warden of the Greene County (Missouri) Jail. He named as Respondents "Warden, Greene County Jail" and the federal officials, all in their official capacities. The Court substitutes Jason Johnson as the Respondent in place of "Warden, Greene County Jail." However, through the remainder of this Order, the term "Respondents" refers to the federal officials under whose authority Petitioner's detention has been effectuated and does not include Jason Johnson.

(‘ATD’) program and regular ICE reporting requirements while his removal proceedings remained pending.” (Doc. 1, ¶ 2, 20-22.) He has attended all hearings he has been required to attend, has complied with all other conditions of release, and currently has an asylum application pending. (Doc. 1, ¶¶ 3, 23, 25.) And, while released, he has “established significant family and community ties in the United States and has maintained stable employment throughout the pendency of his immigration proceedings.” (Doc. 1, ¶ 27; *see also* Doc. 1, ¶ 26.)

In August 2026, Petitioner was pulled over by local law enforcement and then turned over to ICE’s custody, (Doc 1, ¶¶ 29-32); he has been detained ever since. There has been no argument or suggestion that he violated the terms of his bond; he has nonetheless been detained and has not been considered for release (on either his original bond or a new bond) because the Department of Homeland Security and the Executive Office for Immigration Review now takes the position that Petitioner’s detention is mandatory pursuant to 8 U.S.C. § 1225. This prompted Petitioner to seek habeas relief.

The Petition contains four Counts.

| | |
|---|---|
| Count I | Violation of Procedural Due Process |
| Count II | Violation of the Immigration and Naturalization Act |
| Count III | Violation of the Fourth Amendment |
| Count IV | Violation of Substantive Due Process |

Respondents argue that Petitioner is not entitled to relief on any of these claims. The Court resolves the parties’ arguments, as necessary, below.

## II. DISCUSSION

### A. Count II

The Court begins with Count II because it is a statutory ground for relief, and the Court should address statutory issues before addressing constitutional issues. Count II alleges that Petitioner's detention is governed by 8 U.S.C. § 1226 and not 8 U.S.C. § 1225. The difference is important because § 1225(b)(2)(A) provides that "an alien who is an applicant for admission . . . shall be detained" if it is determined that he "is not clearly and beyond a doubt entitled to be admitted[.]" In contrast, § 1226 would permit Petitioner to be considered for bond.

In *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Eighth Circuit held that a person in Petitioner's circumstances is an "applicant for admission," so his detention is governed by § 1225. Petitioner acknowledges this point in both the Petition and the Traverse. (*E.g.*, Doc. 1, ¶ 48; Doc. 8, pp. 4-6, 20.) Based on *Avila*, the Court denies Petitioner relief on Count II.

### B. Counts I and IV – Due Process

While Count I describes itself as asserting a procedural due process claim and Count IV describes itself as asserting a substantive due process claim, the difference between them is not so obvious. Count I alleges that Petitioner had "a substantial liberty interest in remaining free from physical detention," (Doc. 1, ¶ 74), and this liberty interest could not be taken away absent appropriate procedures. Count IV similarly alleges Petitioner had an interest in remaining free, and applying § 1225 to deprive him of that interest violates due process. (Doc. 1, ¶¶ 125-27.) In other words, in both Count I and Count IV, Petitioner is arguing that § 1225 is unconstitutional as applied to a person who (1) could have been detained but instead was released on bond, (2) has not violated the conditions of bond, and (3) has lived in the country for an extended period of time. The Court agrees.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation omitted). While "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *id*. at 522; *see also id*. at 526; *Banyee v. Garland*, 115 F.4th 928, 931-32 (8th Cir. 2024), the Due Process protections granted to aliens are not limited to simply requiring Respondents to follow statutes. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *United States v. Berdugo-Urquidez*, 494 U.S. 259, 271 (1990). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause, *Zadvydas*, 533 U.S. at 690, and it cannot be denied to anyone—including aliens—without appropriate process.

Having determined that *some* process is due, the next task is to determine *what* process is due. This inquiry involves balancing various considerations, including: "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). In the circumstances of this case, the risk of erroneous deprivation does not appear to be a factor; the focal point of the analysis is the balance between the liberty interest at stake for the individual and the Government's interest in denying that liberty interest.

In many circumstances related to the process afforded to aliens, Congress's assessment of the balance (as expressed through statutes) is sufficient. *See Banyee*, 115 F. 4th at 933 (citing *Demore v. Kim*, 538 U.S. 510, 528 (2003)). For instance, *Demore* addressed § 1226(c), which provides that a lawful permanent resident who becomes deportable because he committed certain

types of crimes shall be detained without being considered for release on bond. The Supreme Court held "that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [such] persons . . . be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513. *Banyee* reiterated this point with respect to the same statute. 115 F.4th at 933. And § 1225(b)(2)(A)—which Petitioner is not challenging on its face—could be justified by a concern that aliens who are "not clearly and beyond a doubt entitled to be admitted" may not appear for subsequent hearings. This rationale would justify automatically detaining those who (1) seek admission immediately upon arriving at the border or (2) cross the border unlawfully and without notice and are found by authorities later. And notably, Respondents focus on justifying the detention of people who enter the country but are not entitled to be admitted.

But Petitioner's circumstances are different: he was detained, and instead of detaining him the Government exercised its discretion (which continues to exist under § 1225(b)) to permit Petitioner to post a bond and remain free. The Government did not have to grant Petitioner release on bond,

> [b]ut when the Government decides to release an individual on bond, it creates an implicit promise that their liberty will be revoked only if they fail to live up to the conditions of release. . . . To revoke that promise arbitrarily—without process and with no allegation of changed circumstances or violation by Petitioner—is fundamentally unfair.

*Singh v. Mullin*, 2026 WL 1021846, at *4 (N.D. Iowa Apr. 15, 2026) (quotation omitted; cleaned up). Thus, numerous courts have held that when the Government grants bond, it cannot change its position and detain the alien—even if bond did not have to be granted in the first instance—absent a change in circumstances. *E.g.*, *Sandhu v. Mullin*, 2026 WL 1146643, at *3-4 (D. Neb. Apr. 28, 2026); *Aleski M. v. Warden, Lawrence Cnty. Jail*, 2026 WL 1133615, at *4-6 (D.S.D Apr. 27,

2026); *Abbas v. Schneider*, 2026 WL 1079292, at *7-8 (S.D. Iowa Apr. 17, 2026); *Singh*, 2026 WL 1021846, at *4. "Courts have recognized the self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their continued liberty." *Jesus Alejandro G. A. v. Blanche*, 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (quotation omitted)).[2] This conclusion arises from the larger recognition that liberty interests are not created only by the Constitution or statutes; they can also arise from legitimate expectations or interests created by the government's policies and practices. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). And in a similar context (involving a convicted person released on parole), the Supreme Court observed:

> The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. . . . We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Court therefore concludes Petitioner has a liberty interest in being free on bond.

The next question is: what is Respondents' interest in withdrawing the bond previously granted to Petitioner? As stated earlier, Respondents do not contend Petitioner violated the terms of his release, nor do they identify any change in circumstances that might justify revoking his bond. The only justification for Respondents' actions seems to be that they now believe he should not be released on bond.[3] This change in the understanding of the interplay between § 1225 and §

---

[2] The Court has limited its citations to district courts in the Eighth Circuit. There are numerous decisions from other district courts around the country reaching the same conclusion.

[3] Respondents point out that the decision to grant bond is discretionary, but that point is not being questioned. They further contend that "ICE retains the statutory and regulatory authority to revoke parole decisions," (Doc. 7, p. 11), and point to a regulation which states that bond/parole can be revoked if "the conduct of the alien, *or any other circumstance*, indicates that release would no longer be appropriate." (Doc. 7, p. 12 (quoting 8 C.F.R. § 241.4(l)(2) (emphasis supplied)).) But Respondents have not explained what circumstance justifies revocation of Petitioner's

1226, *see Avila*, 170 F.4th at 1140 (Erickson, J., dissenting), is not sufficient to justify withdrawing the liberty interest the Government already created by granting Petitioner bond.[4]

Finally, the Court addresses the appropriate remedy for the liberty deprivation discussed above. Petitioner has been detained even though he was released on bond; this deprivation is not remedied simply by giving him a bond hearing because he already had been released on bond. The appropriate remedy is for Petitioner to be released under the same bond conditions that existed when he was detained.

## III. CONCLUSION[5]

The Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to release Petitioner forthwith. Respondents are also **ORDERED** to return any property (including documents) taken from Petitioner to him or to his attorney within seven (7) calendar days.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

**DATE**: September 3, 2026

bond. More importantly, they do not contend they have complied with the procedures set forth in § 241.4.

[4] The Court's decision is thus limited to an alien who was released on bond and has not been alleged to have violated its conditions. The Court expresses no opinion on the constitutionality of § 1225's application to other circumstances, including to aliens who are detained at the border upon their initial entry or after having been discovered in the country after unlawfully entering. The Court also expresses no opinion as to what "changed circumstances" might justify revoking Petitioner's bond because Respondents have not suggested any exist.

[5] The Court's resolution of Counts I and IV makes it unnecessary to address Count III, and that count is dismissed without prejudice.